UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDY BRITTON and <br> CAROLYN BRITTON, <br><br> Plaintiffs, <br><br> v. <br><br> MARCUS, ERRICO, EMMER & <br> BROOKS, P.C., JENNIFER BARNETT, <br> and DEAN LENNON. <br><br> Defendants. | * <br> * <br> * <br> * <br> *   Civil Action No. 18-cv-11288-IT <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER
November 30, 2020

TALWANI, D.J.

Plaintiffs Randy Britton and Carolyn Britton allege that their condominium association's law firm, Marcus, Errico, Emmer & Brooks, P.C., and two of its lawyers acted unlawfully in connection with efforts they undertook to collect past due assessments that the Brittons owed, under a state court judgment, to the condominium association. Second Am. Compl. [#46]. For the reasons explained below, Defendants' Motion to Dismiss the Second Amended Complaint [#54] is GRANTED IN PART and DENIED IN PART.

**I.    Relevant Background**

The court dismissed Plaintiffs' First Amended Complaint [#19] for failing to state facts sufficient to state a claim and conveyed to Plaintiffs that claims for relief must be clearly stated in the complaint and not by reference to other cases or documents. See Elec. Order [#42]. Plaintiffs' Second Amended Complaint [#46] fails in large part to comply with this directive, but in light of Plaintiffs' pro se status and a general presumption that cases should be heard on the

1

merits, the court has attempted to identify the Second Amended Complaint's well-pleaded factual allegations.

Plaintiffs Randy Britton and Carolyn Britton together own and reside in a unit in the Drummer Boy Condominium and by virtue of their ownership are members of the Drummer Boy Homes Association, Inc. ("DBHA"). Second Am. Compl. ¶¶ 1, 2, 9 [#46]. Defendant Marcus, Errico, Emmer & Brooks, P.C. ("MEEB") is a Massachusetts Professional Corporation of Attorneys that specializes in debt collection in common interest communities. Id. ¶ 3. Defendant Jennifer L. Barnett and Defendant Dean T. Lennon are licensed attorney partners at MEEB. Id. ¶ 4–5. For the purpose of the events relevant to this complaint, Defendants served as counsel for DBHA. See generally Second Am. Compl. [#46].

This lawsuit follows a previous round of protracted litigation between the Brittons and DBHA over unpaid condominium fees. The facts of that prior action were summarized by the Massachusetts Supreme Judicial Court ("SJC") as follows:

> Over the last ten years, the parties in this case have been involved in protracted and contentious litigation concerning parking rights at a condominium complex. Our recitation of the factual background and procedural history encompasses only those matters that relate to the specific issues now before this court. Drummer Boy Condominium II, which consists of twelve individual units, is one of nine condominiums comprising Drummer Boy Green in Lexington. In the aggregate, the nine condominiums have approximately 150 units. The defendant, Carolyn P. Britton, purchased a unit in Drummer Boy Condominium II in May, 2001. In April, 2008, she transferred title to the unit by quitclaim deed to herself and her husband, defendant Randy A. Britton, as tenants by the entirety.
>
> Around 2004, the Brittons began to withhold payment of their monthly common expenses because of a dispute concerning parking rules and related fines. On August 8, 2007, the Drummer Boy Homes Association, Inc. (association), commenced an action in the District Court against the Brittons. It sought to recover unpaid common expenses and to enforce a priority lien pursuant to Mass. Gen. Laws ch. 183A, § 6 (c), and Mass. Gen. Laws ch. 254, §§ 5, 5A, that would be superior to the first mortgage to the extent of the common expenses due during the six months immediately preceding the commencement of the action. The Brittons continued to withhold payment of their monthly common expenses. On February 6, 2008, the association commenced a second action to recover the

> unpaid common expenses that had accrued since the filing of its first action, and to enforce a second six-month priority lien. When the Brittons still did not pay their monthly common expenses, the association commenced a third action on October 6, 2008, to recover the unpaid common expenses that had accrued since the filing of its second action, and to enforce a third six-month priority lien. The association subsequently filed a motion to consolidate the three actions, which was allowed.

Drummer Boy Homes Ass'n, Inc. v. Britton, 474 Mass. 17, 18–19 (2016) ("Drummer Boy"). In their ruling, the SJC principally addressed three issues. First, the SJC rejected the Brittons' argument that DBHA did not have a legal basis under Mass. Gen. Laws ch. 183A to charge and recover unpaid common expenses. Id. at 21–22. Second, the SJC ruled that condominium associations such as DBHA could bring successive actions under Mass. Gen. Laws ch. 183A, § 6, to secure ongoing priority liens over the first mortgage on the property, as DBHA had done in the case of the Brittons. Id. at 23. Third, the SJC concluded that Massachusetts law allowed condominium associations, such as DBHA, to recover reasonable attorneys' fees and costs for appellate proceedings. Id. at 29–30. Following the SJC's ruling, the trial court issued a judgment in accord with the SJC's decision, and DBHA started efforts to enforce the judgment, including scheduling the Brittons' unit for foreclosure.[1] See generally State Court Record 10–11 [#55-2]; Second Am. Compl. ¶ 65 [#46].

Around the same time that Defendants scheduled the foreclosure of the Brittons' unit, Defendants sent a demand for payment to the Brittons' mortgage servicer for the past due DBHA fees and the servicer elected to assume responsibility for the Brittons' past due condominium

---

[1] The foreclosure sale has not taken place as of the filing of the Second Amended Complaint. See Second Am. Compl. ¶ 32 [#46].

fees, interest, and costs. Second Am. Compl. ¶¶ 42, 64–65 [#46].[2] This was done over the Brittons' objections. Id.

The Brittons now bring this action in federal court, alleging that Defendants are liable under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and the federal Fair Debt Collections Practice Act ("FDCPA") for Defendants' efforts to collect the past due DBHA assessments prior to, during, and following the earlier state court proceedings.[3]

## II. Legal Standard

To survive a motion to dismiss, the complaint's well-pleaded facts must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a complaint under a Fed. R. Civ. P. 12 motion to dismiss, the court "must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court may also take judicial notice of certain state court records and decisions. See Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) ("a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other

---

[2] As discussed further below, Massachusetts law requires condominium associations to inform the mortgage servicer when an owner becomes past due on his or her condominium fees. See Mass. Gen. Laws ch. 183A, §6(c). Mortgage servicers are then provided an opportunity to pay the past due amounts themselves in order to keep their priority lien on the unit. Id.

[3] When the court granted Plaintiffs an opportunity to amend their complaint, the court explained that leave to amend was being granted only to clarify the complaint, not to expand the scope of litigation. See Sept. 24, 2019 Hr'g Tr. 41:18–23 [#44] ("I'm not giving you a chance to create new litigation; I'm giving you a chance to state what your claim is"). Nevertheless, in direct disregard for this court's order, Plaintiffs included in their Second Amended Complaint ¶ 63 [#46] a new claim under Mass. Gen. Laws ch. 93A. The ch. 93A claim is dismissed as it was filed without leave of court.

matters susceptible to judicial notice'") (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir.2008)); see also United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005). The plausible factual allegations, taken as true, must ultimately be able to support the legal conclusion that underlies each claim for relief. See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

Where Plaintiffs allege fraud, either as independent claims or as predicates to a RICO offense, they must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). New England Data Servs., Inc. v. Becher, 829 F.2d 286, 290 (1st Cir. 1987) (holding "that Rule 9(b) requires specificity in the pleading of RICO mail and wire fraud"). By its terms, Rule 9(b) directs that "a party must state with particularity the circumstances constituting fraud or mistake." The First Circuit has interpreted this rule to require that beyond pleading "the false statements and by whom they were made," Plaintiffs must also identify "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir.1992) (Breyer, J.)). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

### III. Discussion

The Brittons' claims under RICO and FDCPA can be broken down into two categories. First, the Brittons argue that they do not owe DBHA *any* fees and that, as a result, all of Defendants' efforts to collect the past due fees were unlawful, if not fraudulent. However, most of the Brittons' arguments for why they do not owe the contested fees have already been litigated and decided by the Massachusetts state courts and those that have not—namely, that the past due fees are barred by the Federal Foreclosure Bar and that the state court judgment has been

stayed—also fail. Second, the Brittons argue that Defendants acted wrongfully in the specific billing practices it engaged in to collect these past due fees. The court addresses these two categories of issues in turn.

> *a. The Brittons' contention that they do not owe DBHA any fees*

At the heart of this case is Plaintiffs' longstanding argument that the DBHA's assessments have never been valid. See Second Am. Compl. ¶ 66 [#46] ("the Britton[s] owe nothing, and we never did"). They contend, based on this premise, that Defendants' efforts to collect the disputed fees on behalf of DBHA amount to multiple acts of mail fraud (thus giving rise to the charged RICO offense) as well as violations of the FDCPA.

However, most of the arguments presented by the Brittons as to why they do not owe DBHA the unpaid condominium fees have already been resolved by the state courts. For example, Plaintiffs argue the merits of the parking dispute that gave rise to their original grievance with DBHA. See Second Am. Compl. ¶ 21 [#46]. But, as the SJC explained, regardless of how sound Plaintiffs' argument is as to the parking issue, Plaintiffs are not relieved from their obligation to pay DBHA the condominium fees unless and until a court grants relief from the challenged fees. Drummer Boy, 474 Mass. at 20 (citing Blood v. Edgar's, Inc., 36 Mass.App.Ct. 402, 404–06 (1994)). Plaintiffs also argue that DBHA does not have authority under Massachusetts law to collect the disputed condominium fees from the Brittons. Second Am. Compl. ¶ 20 [#46]. But again, the SJC addressed this argument and ruled that DBHA did have the authority. Drummer Boy, 474 Mass. at 23. Finally, Plaintiffs argue that DBHA did not have authority to charge Plaintiffs attorneys' fees "without statutory authority under G.L.c. 183A, §6, which does not apply to [condominium] fees." Second Am. Compl. ¶¶ 34, 37 [#46]. But the SJC squarely stated that Mass. Gen. Laws ch. 183A, §6, *did* provide DBHA authority to

collect "all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the organization of unit owners and all costs of collection including attorneys' fees, costs, and charges." <u>Drummer Boy</u>, 474 Mass. at 29 (citing Mass. Gen. Laws ch. 183A, §6).[4]

Beyond arguments already resolved, Plaintiffs also present two new arguments for why they do not owe the past due assessments to DBHA. First, they argue that the Massachusetts courts have stayed execution of the state court judgment, and that Defendants have fraudulently proceeded to execute the state court judgment "in direct violation of the [Massachusetts] state court['s] automatic stay." Second Am. Compl. ¶ 59 [#46]. Specifically, Plaintiffs contend that their appeal of the execution of the judgment had the effect of automatically staying the state court proceedings. <u>Id.</u> But the Massachusetts automatic stay rule governs the appeal of judgments, not executions. <u>See</u> Mass. R. Civ. P. 62(a), (d). Indeed, Plaintiffs seem to know this as they requested that the state court stay execution of the judgment pending appeal of the execution order and the state court denied this request. <u>See</u> State Court Record 11 [#55-2]. Accordingly, Plaintiffs' argument that Defendants acted wrongfully insofar as they proceeded to attempt to collect on the state court judgment does not persuade.

Plaintiffs' second argument is that Defendants violated the Federal Foreclosure Bar by approaching the Brittons' mortgage servicer with the past due amounts that the Brittons' owed per the state court judgment and allowing the mortgage servicer to elect to pay these amounts so that the servicer would keep its priority lien on the Brittons' unit as provided by Massachusetts

---

[4] Plaintiffs also argue that the SJC's decision is "clearly erroneous" and "not valid or final," Pls.' Opp'n 15 [#60], and that, therefore, Defendants acted unlawfully by seeking payment for past due assessments "without a valid judgment." Second Am. Compl. ¶ 65 [#46]. The court need not consider these arguments as the SJC decision is binding on the Brittons and not reviewable by this court.

7

law.[5] Second Am. Compl. ¶¶ 42, 59 [#46]. By way of background, the Federal Foreclosure Bar, 12 U.S.C. § 4617 (j)(3), states that "[n]o property of the [Federal Housing Finance Agency] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency."

The Brittons contend that since their mortgage is owned by Fannie Mae and since Fannie Mae is under conservatorship of the Federal Housing Finance Agency, the Federal Foreclosure Bar prohibits any attempts by DBHA and MEEB to collect on the past due assessments. Second Am. Compl. ¶ 39 [#46]. But DBHA has not extinguished any lien held by the Brittons' mortgage servicer. Instead, the mortgage servicer took voluntary affirmative steps to secure the mortgage servicer's lien priority over the Brittons' unit.

The Brittons point to the Berezovsky v. Moniz, where the Ninth Circuit Court of Appeals concluded that the Federal Foreclosure Bar preempts a Nevada law that provided Nevada condominiums a "superpriority lien" on unpaid condominium fees. 869 F.3d 923, 931 (9th Cir. 2017). The Circuit reasoned that the "superpriority liens" effectively extinguished the rights of

---

[5] The SJC provided the following helpful explanation of this provision of Massachusetts law:

> By enabling a first mortgagee to assume responsibility for a unit owner's unpaid common expenses, the Legislature has balanced the interests of a condominium association with those of a first mortgagee. On the one hand, the condominium association is assured that it will receive six months' worth of delinquent common expenses plus all future common expenses, thereby allowing it to meet its ongoing financial obligations without imposing an additional burden on unit owners who have paid their common expenses in a timely manner. On the other hand, the first mortgagee is assured that it will maintain its lien priority, and that the condominium association will refrain from taking further enforcement action. The first mortgagee also can avoid the costs and reasonable attorney's fees that otherwise would be incurred in the lien enforcement action, and can preserve the value of its collateral through the continuous payment of common expenses.

Drummer Boy, 474 Mass. at 27–28.

the Federal Housing Finance Agency to the underlying asset. Id. The Brittons argue that the Federal Foreclosure Bar prohibits the condominium association from ever subjugating Fannie Mae's lien to its own, and even though DBHA never actually extinguished Fannie Mae's lien on the Brittons' property, the Brittons suggest that DBHA and Defendants used the unlawful (according to the Brittons) threat of subjugating Fannie Mae's lien in order to unlawfully (again, according to the Brittons) encourage Fannie Mae to pay the past due assessments on behalf of the Brittons.

But there are at least three problems with the Brittons' argument. First, no court has extended the Ninth Circuit's rationale to the Massachusetts statute that allows condominium associations to obtain liens senior to the mortgage holder where the mortgage holder does not itself assume responsibility for the past due fees. But even assuming that the Ninth Circuit's reasoning did apply with equal force here, it is not apparent why the Massachusetts statute would necessarily be preempted in its current form. As applied here, the Massachusetts statute gives the mortgage servicer the *choice* of whether to assume responsibility for the unpaid condominium fees. There are good reasons that a servicer may choose to do this that do not involve wrongful threats. For one, once the Federal Housing Finance Agency's conservatorship ends, the Federal Foreclosure Bar—to the extent it applies in Massachusetts—would no longer protect the mortgage holder from the condominium's priority status in foreclosure. Thus, by assuming responsibility for the past-due payments now, the servicer avoids the Brittons' unit accruing additional costs and fees between now and when the conservatorship ends—costs the servicer will ultimately have to cover if it wishes to maintain its priority status. Drummer Boy, 474 Mass.

at 28.[6] Third and finally, the Brittons' argument fails because the crux of their argument here is not that the relevant portion of Massachusetts law is preempted by the Federal Foreclosure Bar—a question not ultimately at issue here and one that the Brittons may not even have standing to bring—but that Defendants committed mail fraud by *complying with* the requirements of the Massachusetts law. Second Am. Compl. ¶¶ 59, 64 [#46]. Where there is no persuasive basis for Defendants to conclude that the Massachusetts law has been invalidated nor any plausible allegation that Defendants were following the letter of the law in bad faith, Defendants' compliance with the strict terms of the statute does not provide a plausible basis for relief.

      b. *The Brittons' argument that Defendants engaged in unlawful practices when collecting unpaid fees*

Once Plaintiffs' arguments that Defendants acted wrongfully by virtue of attempting to collect any past due amounts owed to DBHA are put aside, what is left are allegations that Defendants acted wrongfully in the specific manner in which they sought to collect the past due assessments. Namely, the Brittons argue that Defendants acted in violation of various provisions of the FDCPA through its debt-collection practices and that Defendants' conduct violated RICO.

Starting with the FDCPA allegations,[7] Plaintiffs contend that Defendants engaged in "intentional ledger manipulation" by billing Plaintiffs more than was reflected in DBHA's ledgers. Second Am. Compl. ¶¶ 28, 29, 30 [#46]. In support of their claim, Plaintiffs put forth

---

[6] Likewise, the servicer may not be as confident as are the Brittons that the Ninth Circuit's reasoning would extend to the Massachusetts statute and unless and until the statute is ruled preempted, the mortgage servicer may choose, as it has here, to act in accordance with the Massachusetts law.

[7] Even in the context of the FDCPA claim, Plaintiffs focus a substantial portion of their argument on the contention that Defendants misstated the amount of the debt for the same reasons already rejected here and in the state courts—that is, for example, because the Brittons did not owe anything to DBHA; DBHA initiated collection efforts without a valid, final judgment; and the collection efforts were prohibited by the Federal Foreclosure Bar. Second Am. Compl. ¶¶ 65, 66 [#46]. These arguments are not discussed further.

two tables that contain dates, the amount billed, and the amounts contained in DBHA's ledgers. Id. But as is evident from the tables in paragraphs 28 and 29 of the Second Amended Complaint, the bills at issue largely occurred outside the FDCPA's statute of limitations. See 15 U.S.C. § 1962k(d) (one-year statute of limitations for FDCPA claims).[8] While paragraphs 28 and 29 contain a few instances of bills that were sent to the Brittons within the limitations period for FDCPA, for those bills there is no difference between the alleged amount billed and the amount contained in DBHA's ledger. See Second Am. Compl. ¶¶ 28, 29 [#46]. Accordingly, Plaintiffs have failed to state a claim under FDCPA for the accused "intentional ledger manipulation" on the basis of the bills listed in paragraphs 28 and 29 of the Second Amended Complaint.

Outside of the tables contained in paragraphs 28 and 29 of the Second Amended Complaint, the court can identify three specific factual allegations that may give rise to a timely FDCPA claim. First, paragraph 67 of the Second Amended Complaint states that in a November 15, 2017 letter, one of the MEEB attorneys "signed and sent out . . . a false and deceptive letter with a typewritten entry for $17,179.04 in unposted legal fees added to the ledger." Plaintiffs argue that, as in McDermott v. Marcus, Errico, Emmer & Brooks, P.C., the 2017 bill included attorneys' fees charged to Plaintiffs before they had been invoiced to DBHA, constituting "false representations of the character and the status of the debts in violation of section 1692e(2)(A)." Second Am. Compl. ¶ 67 (citing 911 F. Supp. 2d 1, 66 (D. Mass. 2012), aff'd in relevant part, rev'd in non-relevant part and remanded, 775 F.3d 109 (1st Cir. 2014)). Second, Plaintiffs argue that when Defendants communicated the notice of delinquencies to the mortgage servicer in 2017, as required by Mass. Gen. Laws ch. 183A, § 6(c) (discussed above in the context of the

---

[8] Plaintiffs do not present any argument for why the limitations period on these claims would be subject to tolling.

11

Federal Foreclosure Bar), Defendants violated FDCPA's prohibitions on third-party communications. Pls.' Opp'n 4 [#60] (citing Second Am. Compl. ¶ 67 [#46]; 15 U.S.C. § 1692c(b)). Third, Plaintiffs contend that in all their bills (necessarily including those that fall within the statute of limitations), Defendants misstated the amount owed since Defendants charged 18% interest where they were not authorized to charge more than 6%. Second Am. Compl. ¶ 36 [#46]. On these three allegations, Defendants' Second Amended Complaint is not subject to dismissal for failure to state a FDCPA claim.

The court next turns to the RICO allegations. Plaintiffs contend that some or all of the Defendants are liable under RICO for conducting the affairs of an enterprise through a pattern of racketeering activity. Second Am. Compl. ¶¶ 57–61 [#46]. Plaintiffs allege that the predicate acts giving rise to the allegation of a pattern of racketeering activity are "mail fraud, extortion, and financial institution fraud." Id. ¶ 60. However, the Second Amended Complaint only provides specific allegations as to the mail fraud predicate. See id. ¶ 67 (alleging Defendants committed mail fraud when they overbilled the Brittons in the delinquency letters); id. ¶ 68 (alleging Defendants committed mail fraud when they started foreclosure proceedings during the state court automatic stay); id. ¶ 42 (alleging Defendants committed mail fraud when they contacted the Brittons' mortgage servicer regarding the past due assessments); id. ¶ 46 (alleging Defendants committed mail fraud when they represented that the balances were accurate when they knew they were not).[9]

---

[9] Although many of the underlying acts of overbilling may be time barred, "where the civil RICO action itself is timely, a predicate act may be alleged and proved even if suit alleging the act would be time barred in RICO's absence." Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992) (quoting Douglas E. Abrams, The Law of Civil RICO § 2.4, at 60 (1991)).

The problem with Plaintiffs' RICO claim is that Plaintiffs have not sufficiently alleged the predicate acts of fraud with the particularity required by Fed. R. Civ. P. 9(b). While Plaintiffs have alleged numerous acts of overbilling throughout their complaint, none of the allegations detail "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009). Instead, as discussed in the previous sections, the only cognizable bases for Plaintiffs' claims are that Defendants sent notices of delinquencies that did not correspond to the amounts on DBHA's ledgers, that Defendants communicated with the mortgage servicers as required by Massachusetts law but as prohibited under the FDCPA, and that Defendants charged the Brittons attorneys' fees before those fees were charged to DBHA. None of these allegations provide the bases for the Brittons' conclusion that Defendants were acting fraudulently. Indeed, it is notable that the Brittons' complaint extensively relies on Magistrate Judge Bowler's decision in McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 102 (D. Mass. 2012) to buttress their allegations that Defendants violated the FDCPA in their dealings with the Brittons. However, the Defendants overlook Magistrate Judge Bowler's finding that Defendants did not act in bad faith in their dealings. Id. at 76, 84, 100, 101.

In actions alleging mail and wire fraud as predicate acts for a civil RICO claim, the First Circuit has held that "dismissal should not be automatic once the lower court determines that Rule 9(b) was not satisfied." New England Data Services, Inc. v. Becher, 829 F.2d 286, 290 (1st Cir.1987). Instead, the court should "make a second determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." Id. The First Circuit has provided some guidance for the court's calculus in making this decision, writing that where a complaint has "provided an outline of the general scheme to defraud and established an inference that the mail or wires was used to

13

transact this scheme" it is unreasonable to expect Plaintiffs to plead "the time, place and contents of communications between the defendants, without allowing some discovery, in addition to interrogatories." Becher, 829 F.2d at 291. But the concerns expressed by the First Circuit are not present here. For one, the court has already provided Plaintiffs the opportunity to amend deficiencies in their complaint. More importantly, Plaintiffs have not put forward a single fact by which the court may be able to reach even an inference that there was a general scheme to defraud as opposed to, at worst, sloppy billing practices that sometimes ran afoul of the FDCPA. Accordingly, and in light of the First Circuit's guidance that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation," Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir.1990), Plaintiffs' RICO claim is subject to dismissal.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss the Second Amended Complaint [#54] is GRANTED IN PART and DENIED IN PART.

The court dismisses Plaintiffs' claims under RICO and Mass. Gen. Laws ch. 93A in their entirety. The court also dismisses Plaintiffs' claims under the FDCPA for the accused "intentional ledger manipulation" as alleged in paragraphs 28 and 29 of the Second Amended Complaint and all claims under the FDCPA based on conduct that allegedly occurred more than one year prior to the filing of the complaint.

Defendants' motion to dismiss is denied as to the FDCPA claims based on the allegations that one of the MEEB attorneys "signed and sent out . . . a false and deceptive letter [dated November 15, 2017] with a typewritten entry for $17,179.04 in unposted legal fees added to the ledger," that Defendants communicated the notice of delinquencies to the mortgage servicer in 2017, and that in the period no more than one year prior to the filing of the complaint,

Defendants misstated the amount owed by charging 18% interest where they were not authorized to charge more than 6%. Second Am. Compl. ¶¶ 36, 67 [#46].

  IT IS SO ORDERED.

Date: November 30, 2020

                      /s/ Indira Talwani
                      United States District Judge