UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDY BRITTON and <br> CAROLYN BRITTON, <br><br> Plaintiffs, <br><br> v. <br><br> MARCUS, ERRICO, EMMER & <br> BROOKS, P.C., JENNIFER BARNETT, <br> and DEAN LENNON, <br><br> Defendants. | * <br> * <br> * <br> * <br> *    Civil Action No. 18-cv-11288-IT <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER
August 13, 2021

TALWANI, D.J.

Plaintiffs Randy and Carolyn Britton allege that the law firm of Marcus, Errico, Emmer & Brooks, P.C., and two of its lawyers (collectively "MEEB"), engaged in unlawful billing practices in connection with efforts that MEEB undertook on behalf of the Brittons' Homeowners Association, Drummer Boy Homes Association, Inc. ("DBHA"). As detailed in the court's November 30, 2020 Memorandum and Order [#70], this lawsuit follows a heated dispute between the Brittons and DBHA arising out of unpaid parking fees that dates back to 2004. Mem. & Order 2–3 [#70] (citing Drummer Boy Homes Ass'n, Inc. v. Britton, 474 Mass. 17, 18–19 (2016)). In this federal action, which followed the Brittons' loss to DBHA in state court, the Brittons turned their attention to DBHA's lawyers, alleging that MEEB violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Fair Debt Collections Practices Act ("FDCPA") in their efforts to collect the very same fees that the Brittons unsuccessfully challenged in the state court action. Defendants moved to dismiss the federal RICO and FDCPA claims on the basis that the allegations failed to state a claim. See Defs.' Mot. Dismiss Second

Am. Compl. [#54]. The court allowed Defendants' motion as to all but three claims set forth in the Second Amended Complaint [#46] on the basis that the allegations did not amount to fraud (which Plaintiffs relied on to establish a claim under RICO) and that most of the allegations under the FDCPA were untimely. The three remaining FDCPA claims are as follows: (1) that in November 2017, an MEEB attorney signed and sent out a false and deceptive letter with a typewritten entry for $17,179.04 in unposted legal fees added to the Brittons' ledger; (2) that when MEEB communicated a notice of delinquency to the Brittons' mortgage servicer in 2017, MEEB violated FDCPA's prohibitions on third-party communications; and (3) that Defendants misstated the amount the Brittons owed since Defendants charged 18% interest where they were not authorized to charge more than 6%. See Mem. & Order 11–12 [#70]. Written discovery then commenced as to these three remaining claims. See Scheduling Order [#92].

     Now before the court are five motions to compel, four brought by the Brittons and one by MEEB. As discussed further below, the Brittons' motions seek discovery in this action far beyond the scope of their remaining claims (indeed, the motions suggest that the Brittons seek discovery in order to litigate the claims the court has already dismissed in this action and to relitigate the claims from the state court action). Moreover, the Brittons' third-party discovery practices reflect a level of disregard for the imposition created by the unnecessary and burdensome document subpoenas they have served on non-parties. At the same time, the Brittons have refused to answer straightforward questions about the facts that support their remaining claims. For these reasons, as set forth more fully below, Plaintiffs' Motions to Compel [#98], [#99], [#101], [#109] are DENIED and Defendants' Motion to Compel [#97] is ALLOWED.

I. STANDARD OF REVIEW

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The court has "broad discretion to manage discovery matters," Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003), and must "limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues." In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-cv-02419, 2014 WL 12814933, at *2 (D. Mass. Feb. 7, 2014); see also Fed. R. Civ. P. 26(b)(2)(C).

Third-party subpoenas are governed by Federal Rule of Civil Procedure 45. The rule provides that "[o]n a timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden." See Fed. R. Civ. P. 45(c)(3). "When determining whether a subpoena duces tecum results in an undue burden on a party such factors as 'the relevance of the documents sought, the necessity of the documents sought, the breadth of the request . . . expense and inconvenience' can be considered." Behrend v. Comcast Corp., 248 F.R.D. 84, 86 (D. Mass. 2008) (citing Demers v. LaMontagne, No. 98–10762–REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999)). However, "concern for the unwanted burden thrust upon non-parties is a factor

3

entitled to special weight in evaluating the balance of competing [discovery] needs." Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998).

II.   DISCUSSION

The court addresses the five outstanding motions in turn.

  a.   *Defendants' Motion to Compel Further Answers to Interrogatories [#97]*

MEEB moves to compel Plaintiffs to supplement their answers to interrogatories 4 through 9. Interrogatories 4, 5, and 6 request that the Brittons "state all facts that form the basis of [the Brittons'] allegations" for each of the remaining three claims. Defs.' Mot., Ex. 2, 3–5 [#97-2] and interrogatories 7, 8, and 9 request that the Brittons "itemize all damages [the Brittons] claim to have suffered" because of each claim and to also provide the name of the person who calculated the damages, the method(s) used to calculate damages, and an explanation of how damages were calculated. Id. 7–8.

Starting with interrogatories 4, 5, and 6, Plaintiffs provide several arguments for why they should not be compelled to provide answers, but none are persuasive.[1] Plaintiffs' only colorable objection is that Defendants' contention interrogatories are premature and that the court should exercise its discretion under Fed. R. Civ. P. 33(a)(2) to delay Plaintiffs' responses to some later stage in discovery. But Plaintiffs put forth no good reason for why they cannot

---

[1] Most are not even colorable. Plaintiffs argue that a response is unnecessary under Fed. R. Civ. P. 56(d), but that rule provides a limited defense to a motion for summary judgment. Plaintiffs invoke Fed. R. Civ. P. 33(d), but invoking Rule 33(d) is inapposite in the case of contention interrogatories where Defendants seek to know what *Plaintiffs* contend to be the basis of their claims. Plaintiffs also argue that Defendants' interrogatories are not a "good faith request for information" but instead a "discovery trap." But it is well settled that parties may use contention interrogatories to obtain specification of the facts upon which a claim is grounded. See Fed. R. Civ. P. 33(a)(1); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2167 (3d ed. 2021).

respond based on the facts now known to them and supplement if additional facts are obtained. Nor do Plaintiffs state why additional discovery would be necessary for them to state the basis and damages calculations for these relatively straightforward and technical claims based on the materials already in their possession (whether from their pre-filing investigation or the materials received through discovery). See Firetrace USA, LLC v. Jesclard, No. CV-07-2001-PHX-ROS, 2009 WL 73671 at *2 (D. Ariz. Jan. 9, 2009) (putting the burden on the objector to justify its failure to respond to contention interrogatories); 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2167 (3d ed. 2021) (noting that courts should reserve delaying responses to contention interrogatories only in "appropriate cases."). Finding no basis for delaying Plaintiffs' deadline to respond, Plaintiffs are hereby ordered to respond to interrogatories 4, 5, and 6 based upon the facts currently known to them.

      While Plaintiffs provided answers to the damages interrogatories—interrogatories 7, 8, and 9—the answers are plainly deficient. In their response, Plaintiffs explain that the damages were calculated using a excel spreadsheet that tabulates the Brittons' DBHA ledger dating back to 2001 and that, based upon this tabulation, Plaintiffs assert $250,257.08 in damages. Defs.' Mot., Ex. 2, 7 [#97-2]. This is a seemingly impossible sum based on the three remaining FDCPA claims and the Brittons implicitly suggest in their response that this figure is not, in fact, based on the FDCPA claims because they do not want to "mislead" MEEB "into thinking [it] is only facing recoverable damages for what [MEEB] defines as claims 1, 2, and/or 3." Id. at 6–7. As grounds for asserting that MEEB's liability extends beyond the remaining claims, the Brittons assert that this court's prior ruling dismissing the other claims was wrong. Id. While the Brittons may disagree with this court's ruling, discovery in this case is limited to the three FDCPA violations identified in the court's November 30, 2020 Memorandum and Order [#70].

Accordingly, the Brittons are also ordered to revise their responses to interrogatories 7, 8, and 9, limiting their responses to damages arising from the three surviving claims.

Plaintiffs shall serve on Defendants the revised interrogatory responses within fourteen days of this order. Plaintiffs are warned that their interrogatory responses shall not include argument or a recitation of matters outside the scope of these proceedings. Failure to comply with this order may result in sanctions.

> b. *Plaintiffs' Motion to Compel Responses to the Third-Party Subpoena Served on MRI Software LLC [#109]*

Non-party MRI Software LLC ("MRI") is a real-estate software company that licenses software to property management companies, including DBHA's property management companies, to help the property managers manage their accounts. MRI Opp'n 2 [#110]. Plaintiffs served a Rule 45 subpoena on MRI requesting, inter alia:

> [a] license, including a unique user id and a unique password, to remotely access . . . [DBHA's property management companies'] Property Management Software and database(s), with all rights to see everything that the controller, information technology professionals, and/or the software administrator can see, but with no rights to change or update anything.

MRI Rule 45 Subpoena [#101-3]. As MRI explains in its opposition, Plaintiffs' request would give Plaintiffs unfettered access to "confidential, sensitive, personal information, including social security numbers and financial information, of hundreds, if not thousands, of tenants who happen to live in rental properties or homeowner's associations managed by [the property management companies] but have no connection whatsoever to this case." MRI Opp'n 5 [#110]. Plaintiffs do not rebut MRI's characterization of the scope of their request.

Plaintiffs' subpoena goes far afield of what is relevant to the three remaining claims in this case. Indeed, in defending the relevance of requested information, Plaintiffs do not offer any argument for why the requested information would help Plaintiffs in establishing the three

6

remaining FDCPA claims. Instead, Plaintiffs argue that they require as much information as possible from multiple sources to assist their efforts to prove fraud. Pls.' Mot. 7 [#109]. But Plaintiffs' fraud claims were dismissed. Plaintiffs also argue that they require detailed information concerning their ledger's balance from 10 years before the events at issue here so that Plaintiffs may be able to establish that the state court did not have subject-matter jurisdiction over the state court action. Id. at 10–12. That is, Plaintiffs effectively acknowledge that that they are improperly attempting to use the power of this court's process not to establish the alleged FDCPA violations at issue in these proceedings, but to relitigate their state court case.

      Plaintiffs' strongest argument for why the discovery they seek from MRI is relevant is that they may be able to use the information to defeat MEEB's affirmative defense that any errors in billing "were unintentional and the result of a bona fide mistake within the scope of 15 U.S.C. sec. 1692k(c)." Defs.' Answer 7 [#71].[2] Namely, Plaintiffs argue that in order for them to be able to effectively assess whether the alleged billing errors were intentional or a mistake, Plaintiffs will "need to review all of the books, records, ESI, and inspect the computer systems, both hardware and software . . . ." Pls.' Mot. 9–10 [#109]. But even if access to the entire database of historical records from the property management system held the prospect of providing Plaintiffs with some relevant circumstantial evidence about whether the events in 2017 were the product of a mistake (a speculative proposition), the court finds any relevancy is

---

[2] Plaintiffs also argue that the documents may be relevant for MEEB's second affirmative defense: that MEEB was not engaged in debt collection practices, as it is defined in the FDCPA, but in "the practice of enforcing a security interest." Defs.' Answer 7 [#71]. Plaintiffs contend that by accumulating this historical information, Plaintiffs will be able to show that MEEB's liens were not perfected at the time they were attached. However, any technical deficiencies in the liens, without more, is irrelevant for the question of whether MEEB was in the practice of enforcing a security interest versus collecting a debt.

substantially outweighed by the breadth and intrusiveness Plaintiffs' request would impose not only on MRI but on potentially thousands of other non-parties unrelated to this action. Accordingly, Plaintiffs' Motion to Compel [#109] is DENIED and the Rule 45 subpoena served on MRI is quashed.[3]

      c.    *Plaintiffs' Motion to Compel Responses to the Third-Party Subpoena Served on The Dartmouth Group [#98]*

Non-party The Dartmouth Group served as the property manager for DBHA until the termination of the management agreement in 2010. Dartmouth Group Opp'n 1–2 [#107]. Plaintiffs' Rule 45 Subpoena [#113-3] requests that The Dartmouth Group produce a litany of documents dating back to 2005 and provide access to The Dartmouth Group's premises for the purposes of inspection.[4] Plaintiffs' document subpoena is plainly overbroad but that consideration is ultimately of no moment here as The Dartmouth Group states that it no longer has DBHA-related materials in its possession, custody, or control since it turned over these documents to DBHA upon the termination of the management agreement, as required under Massachusetts law. Dartmouth Group Opp'n 1 [#107] (citing Mass. Gen. Laws ch. 183A, § 10(c)(4) ("The manager or managing agent shall give to the organization of unit owners all books, records, funds, and accounts in the possession of the manager or managing agent upon

---

[3] MRI raises a number of additional issues with Plaintiffs' subpoena that the court does not need to reach, namely: (1) that Plaintiffs' request is not technologically or practically feasible, (2) that Plaintiffs can obtain the requested information from DBHA and/or the property management companies directly, and (3) that Plaintiffs failed to comply with Local Rule 37.1. MRI Opp'n 8–11 [#110].

[4] As they did with MRI, Plaintiffs request that The Dartmouth Group also provide Plaintiffs with a user id and password that would grant Plaintiffs access to DBHA's property management software. Even if The Dartmouth Group was able to comply with this request, the request would be denied for the same reasons set forth in the previous section as to MRI.

termination of the agreement.")). As The Dartmouth Group credibly asserts that it does not possess the sought-after records, Plaintiffs' Motion to Compel [#98] the production of said records (and access to The Dartmouth Group's premises) is DENIED and the Rule 45 subpoena served on The Dartmouth Group is quashed.[5]

      d.    *Plaintiffs' Motion to Compel Responses to MEEB's Responses to Interrogatories and Document Requests [#99]*

Plaintiffs' next motion to compel challenges the adequacy of MEEB's responses to interrogatories and document requests.[6] Contrary to Local Rule 37.1(b), Plaintiffs do not provide particularized objections to MEEB's responses. Instead, Plaintiffs lodge a wholesale objection that MEEB's responses are improperly constrained to Plaintiffs' three remaining claims where Plaintiffs are also entitled to material relevant to MEEB's affirmative defenses (i.e., that any violations of the FDCPA were accidental and that MEEB is not liable under the FDCPA because MEEB was not acting as a debt collector during the relevant times).

While the Brittons are correct that they are entitled to discovery related to MEEB's affirmative defenses, the Brittons fail to explain how their specific discovery requests are

---

[5] Plaintiffs also request sanctions for "spoliation" of the records. Where The Dartmouth Group was required by law to turn over the records in its possession, Plaintiffs' allegation of spoliation is unfounded.

[6] Plaintiffs also complain about the sufficiency of MEEB's initial disclosures. Namely, Plaintiffs assert that MEEB's initial disclosures did not produce material related to MEEB's defenses, but instead just as to the three remaining claims. To the extent that Plaintiffs complain about the sufficiency of MEEB's initial disclosures, Rule 37(c)(1) provides a "self-executing" sanction for a party's failure to comply with its Rule 26(a) obligations. Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29, 33 (1st Cir. 2001). That is, the party will be not allowed to use non-disclosed information or witnesses to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Accordingly, to the extent that MEEB's initial disclosures were insufficient (which MEEB denies), the court will address these issues if and when MEEB proffers non-disclosed evidence.

relevant to proving or disproving those affirmative defenses. Indeed, many of the document requests to which Defendants objected sow serious doubts about relevancy while demonstrating the breadth and intrusiveness of Plaintiffs' demands.[7] For example:

- No. 2: An unredacted copy of all MEEB Invoices dated 7-31-2003 to present, sorted chronologically by date, in a single pdf file.
- No. 3: An unredacted Microsoft Excel download of all MEEB Invoices dated 7-31-2003 to present showing one invoice per row and all available invoice fields should be included in the columns.
- No. 4: A copy of MEEB's annual financial statements for 2003 to present: Income Statement, Balance Sheet, Cash flow statement, and Statement of Changes in Owner's Equity.

Pls.' Requests for Production [#99-5]. And while other document requests are narrower, for example, No. 17 requests "All documents evidencing that Randy Britton or Carolyn [Britton] made directed payments, requiring MEEB to apply our payments in strict compliance with our payment application instructions," and No. 25 requests "a pdf copy of all pdf documents saved to the Brittons' [property management account]," Plaintiffs' failure to comply with the Local Rules and explain their position "as to each contested issue," Local Rule 37.1(b)(5), makes it impossible for the court to evaluate how these (somewhat) narrower requests are in fact relevant to the claims and defenses at issue here. See Theidon v. Harvard Univ., No. 15-CV-10809-LTS, 2016 WL 5024195, at *2 (D. Mass. Sept. 16, 2016) (denying motion to compel where plaintiffs had failed to comply with Local Rule 37.1 and instead argued for "as many as fifteen requests for production" in a single argument). This is particularly problematic where, as here, there is no

---

[7] Plaintiffs' failure to specify their issues with Defendants' production is especially problematic with regards to the interrogatory responses where, despite all but a few of the interrogatories being directed towards events occurring a decade before the events at issue here, Defendants nonetheless submitted answers to the vast majority of Defendants' interrogatories. By failing to provide argument as to "each contested issue" Plaintiffs fail to explain why they contend the interrogatory responses are insufficient.

apparent connection between the document requests and the specific claims that remain in this action. Because Plaintiffs have failed to establish why the objected-to requests for production are relevant to these proceedings and explain why MEEB's interrogatory responses are insufficient, Plaintiffs' Motion to Compel [#99] is DENIED.

> e.  *Plaintiffs' Motion to Compel Responses to the Third-Party Subpoena Served on First Realty Management Corp. [#101]*

Plaintiffs' final motion to compel seeks compliance with a Rule 45 Subpoena Plaintiffs served on non-party First Realty Management Corp. ("First Realty"). First Realty is DBHA's current property manager (succeeding The Dartmouth Group). Pls.' Mot. 2 [#101]. Plaintiffs' Rule 45 Subpoena [#101-3] requests access to 10 categories of documents and inspection of First Realty's premises.[8,9] While First Realty has not entered an appearance, First Realty did submit an Objection [#101-5] to the Brittons pursuant to Fed. R. Civ. P. 45(d)(2)(B).

As before, the Brittons do not assert that the materials requested from First Realty are relevant to their three remaining claims, but to MEEB's affirmative defenses. Pls.' Mot. 5 [#101]. But, also as before, the subject matter of the Brittons' demands suggests that the discovery the Brittons' seek is not related either the claims or defenses at issue here, but to the Brittons' intention to rehash issues outside the scope of this litigation. For example, the Brittons demand: copies of checks and ledgers for the purpose of examining whether DBHA properly

---

[8] As with MRI and The Dartmouth Group, Plaintiffs also request that First Realty provide Plaintiffs with a user id and password that would grant Plaintiffs access to DBHA's property management software. This request is denied for the same reasons previously set forth.

[9] Plaintiffs do not explain in their motion why they require an opportunity to inspect First Realty's premises. In any event, under Massachusetts law, Plaintiffs, as members of DBHA, have certain rights concerning access of DBHA's books. See Mass. Gen. Laws ch. 183A, § 10(c). Plaintiffs do not allege that they have been hindered from accessing DBHA's books to the extent required by law.

applied payments to their account (Nos. 2 & 8); all of DBHA's books, transaction history, and accounts dating back to 2011 (Nos. 3–7); and "all documents" that may confirm or refute a 2007 balance on the Brittons' account (Nos. 9–10). On their face, these requests are unlikely to bear fruit with regard to any of the claims or defenses at issue in this proceeding, and the Brittons have again failed to explain any possible relevance of the requested documents or offered any basis to conclude that any such relevance is not substantially outweighed by the undue burden created by the unnecessary breadth of the requests. Accordingly, Plaintiffs' Motion to Compel [#101] the production of said records (and access to First Realty's premises) is DENIED and the Rule 45 subpoena served on First Realty is quashed.

III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motions to Compel [#98], [#99], [#101], [#109] are DENIED and Defendants' Motion to Compel [#97] is ALLOWED.

IT IS SO ORDERED.

August 13, 2021                                          /s/ Indira Talwani
                                                         United States District Judge