UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDY BRITTON and CAROLYN BRITTON, | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 1:18-cv-11288-IT * |
| MARCUS, ERRICO, EMMER & BROOKS, P.C., JENNIFER BARNETT, and DEAN LENNON, | * * * * |
| Defendants. | * |

MEMORANDUM & ORDER

June 27, 2022

TALWANI, D.J.

This case arises out of a long-running dispute between Plaintiffs Randy and Carolyn Britton and their condominium association, Drummer Boy Homes Association, Inc. ("DBHA"), regarding unpaid parking fees. In this federal action, the Brittons challenge actions by Marcus, Errico, Emmer & Brooks, P.C., and two of its lawyers (collectively, "MEEB") in collecting fees on DBHA's behalf that the Brittons unsuccessfully challenged in state court.

The court previously dismissed the Brittons' claims under the Racketeer Influenced and Corrupt Organizations Act and Mass. Gen. Laws ch. 93A in their entirety and dismissed as untimely their claims under the Fair Debt Collections Practices Act ("FDCPA") based on conduct that allegedly occurred more than one year prior to the filing of the Brittons' complaint. Remaining are three FDCPA claims alleging (1) that in November 2017, a MEEB attorney signed and sent out a false and deceptive letter with a typewritten ledger entry for $17,179.04 in unposted legal fees; (2) that in 2017, MEEB violated the FDCPA's prohibitions on third-party communications by sending a notice of delinquency to the Brittons' mortgage servicer; and (3)

that MEEB misstated the amount the Brittons owed, since MEEB charged 18% interest where they were not authorized to charge more than 6%.

MEEB now moves for summary judgment on these three claims. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.   **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 331.

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party must demonstrate through "submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

**II.   Background**

  A. *Chapter 183A, Section 6*

In Massachusetts, condominium liens are enforced through Mass. Gen. Laws ch. 183A, § 6. Section 6(a)(i) of the statute provides that a condominium association "shall have a lien on a unit for any common expense assessment levied against that unit from the time the assessment becomes due." Mass. Gen. Laws ch. 183A § 6(a). Section 6(c) provides further that a lien for common expense assessments due in the six months immediately preceding suit "and to the extent of any costs and reasonable attorneys' fees incurred in the action to enforce the lien" is prior to a first mortgage on the unit. Id. § 6(c). In short, the statute secures to the association a six-month lien priority, plus any associated costs and fees, over a first mortgage. Foreclosure of a lien established under chapter 183A may extinguish a first mortgage: if a foreclosure sale is authorized by court order to satisfy the lien and is conducted pursuant to Mass. Gen. Laws ch. 254, § 5A, the property will be deemed sold "free of said first mortgages, if as of the date of such

sale there are unpaid common expense assessments, costs, or reasonable attorneys' fees the lien for which is given priority over said first mortgages in [Mass. Gen. Laws ch. § 6(c)]." Id.

The statute also explains the steps required to enforce the lien. When a unit owner's payment of common expenses has been delinquent for more than sixty days, the association must send notice to both the delinquent unit owner and to any first mortgagee. Id. In addition, prior to filing any action in court to enforce the lien, the association must give the first mortgagee thirty days' notice. Id. Once the lien priority amount is paid, including attorneys' fees and costs, the association's lien priority is extinguished. Id. This notice scheme thus permits the first mortgagee to assume responsibility for the unit owner's unpaid common expenses, maintain its lien priority, and protect its interest from further condominium enforcement actions. Drummer Boy Homes Ass'n, Inc. v. Britton, 474 Mass. 17, 27-28, 47 N.E.3d 400 (2016).

B.  *State Court Litigation*

This lawsuit follows a previous round of litigation between the Brittons and DBHA over unpaid common expenses. The facts of that prior action were summarized by the Massachusetts Supreme Judicial Court ("SJC") as follows:

> Over the last ten years, the parties in this case have been involved in protracted and contentious litigation concerning parking rights at a condominium complex. Our recitation of the factual background and procedural history encompasses only those matters that relate to the specific issues now before this court. Drummer Boy Condominium II, which consists of twelve individual units, is one of nine condominiums comprising Drummer Boy Green in Lexington. In the aggregate, the nine condominiums have approximately 150 units. The defendant, Carolyn P. Britton, purchased a unit in Drummer Boy Condominium II in May, 2001. In April, 2008, she transferred title to the unit by quitclaim deed to herself and her husband, defendant Randy A. Britton, as tenants by the entirety.

> Around 2004, the Brittons began to withhold payment of their monthly common expenses because of a dispute concerning parking rules and related fines. On August 8, 2007, the Drummer Boy Homes Association, Inc. (association), commenced an action in the District Court against the Brittons. It sought to recover unpaid common expenses and to enforce a priority lien pursuant to [Mass. Gen. Laws ch.] 183A, § 6 (c), and [Mass. Gen. Laws ch.] 254, §§ 5, 5A, that would be superior to the first mortgage to the extent of

4

>the common expenses due during the six months immediately preceding the commencement of the action. The Brittons continued to withhold payment of their monthly common expenses. On February 6, 2008, the association commenced a second action to recover the unpaid common expenses that had accrued since the filing of its first action, and to enforce a second six-month priority lien. When the Brittons still did not pay their monthly common expenses, the association commenced a third action on October 6, 2008, to recover the unpaid common expenses that had accrued since the filing of its second action, and to enforce a third six-month priority lien. The association subsequently filed a motion to consolidate the three actions, which was allowed.

Id. at 18-19. DBHA then filed a motion for summary judgment, which the trial court allowed, and the court entered judgment in favor of DBHA in the amount of $22,742.08. Id. at 19-20.[1] On appeal, a panel of the appellate division affirmed the trial court in all respects, except that it concluded that DBHA was entitled to only one six-month period of lien priority. Id. at 21. The panel also found that DBHA was entitled to recover reasonable appellate attorneys' fees and costs. Id. The decision was affirmed by the Massachusetts Appeals Court, and the SJC granted the association's application for further appellate review.

The SJC's ruling addressed three issues. First, the SJC rejected the Brittons' argument that DBHA did not have a legal basis under Mass. Gen. Laws ch. 183A to charge and recover unpaid common expenses. Id. at 21-22. Second, reversing the Appeals Court's limitation on such actions, the SJC ruled that condominium associations such as DBHA could bring successive actions under Mass. Gen. Laws ch. 183A, § 6, to secure ongoing lien priority over the first mortgage on the property, as DBHA had done. Id. at 23. Third, the SJC concluded that Massachusetts law allowed condominium associations, such as DBHA, to recover reasonable attorneys' fees and costs for appellate proceedings. Id. at 29-30.

---

[1] The judgment in favor of the association was comprised of $9,887.22 in unpaid common expenses for the three six-month periods that were the subject of the consolidated actions (which included common expenses, fines, late fees, and costs), $12,314 in reasonable attorneys' fees, and $540.86 in costs of collection. Id. at 20 n.9.

5

On December 15, 2016, the trial court issued an amended judgment and order against the Brittons in the amount of $107,904.90, together with statutory interest, and found that the total sum due and owing constituted a lien on the condominium unit, with priority over the mortgage lien. Am. J. [Doc. No. 139-2]. The order also authorized DBHA to foreclose on the property to enforce its lien in accordance with Mass. Gen. Laws ch. 254 § 5A. Id.

C. *Present Action*[2]

Right before the scheduled judicial foreclosure, the first mortgagee satisfied the priority lien to preserve its interest. Notice to PHH Mortgage [Doc. No. 139-3]; Jan. 28, 2018 Email Chain [Doc. No. 139-6]. Because the Brittons continue to default on their assessed common expenses, the first mortgagee has continued to make the payments. Jan. 28, 2018 Email Chain [Doc. No. 139-6].

On November 15, 2017, MEEB sent communications to the Brittons and the first mortgagee. Notice to PHH Mortgage [Doc. No. 139-3]; Notice to Brittons [Doc. No. 139-4]. The cover email to the first mortgagee explained that payment of "the priority lien" had occurred several months earlier, before the scheduled foreclosure sale, and that MEEB was "now starting the collections process over for the most recent months of July through November 2017." Notice

---

[2] Pursuant to Local Rule 56.1, a party opposing a motion for summary judgment

> shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, *with page references to affidavits, depositions and other documentation*. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party *will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties*.

L.R. 56.1 (emphasis added). The Brittons dispute many of MEEB's factual assertions, see generally Pl's Response to Defs' SOF ("Pls' SOF Resp.") [Doc. No. 146], but fail to include specific citations to record evidence. The court accordingly deems MEEB's factual assertions supported by citations to the record admitted.

6

to PHH Mortgage 1 [Doc. No. 139-3]. It explained further that "[t]he large legal balance from July to present is due to the owner's continued appeal of the SJC judgment. He simply will not give up his fight event though he's lost and even though he has no legal basis for his claims in my opinion." Id. The next document provided notice for a lien in the amount of $66,720.13 and stated that "the lien for six months of common expenses together with attorney's fees and costs will be prior to the first mortgage on the unit." Id. at 2. The communication attached a ledger for June 30, 2012, to November 10, 2017, and included $17,179.04 in "unposted legal fees" for July through November 2017. Id.; Notice to Brittons [Doc. No. 139-4]. The ledger also included monthly fees for the late payments of the common expenses. Id.[3]

On or about January 26, 2018, the first mortgagee paid $21,894 towards the amount claimed by MEEB. Jan. 28, 2018 Email Chain [Doc. No. 139-6]. At the time of the filing of this lawsuit, the first mortgagee had paid a total of $172,296.76 in assessments, late fees, and attorneys' fees, which were added to the Brittons' debts to the first mortgage. See Second Am. Compl. ¶ 41 [Doc. No. 46].

### III. Discussion

The Brittons' three remaining claims allege violations of the FDCPA. The first claim is that MEEB's November 15, 2017 notice of delinquency to the Brittons contained a false or misleading representation, in violation of 15 U.S.C. § 1692e, where it included $17,179.04 in "unposted legal fees," prior to DBHA's obtaining a final judgment for that amount. The second is that MEEB's November 15, 2017 notice of delinquency to the mortgagee violated the

---

[3] Each month, from July 2012 through May 31, 2017, DBHA assessed a monthly late payment fee of 1.5% of the cumulative, overdue condo fee. For July 2012, the monthly late fee was $7.17. By May 31, 2017, the monthly fee was $434.37. Thereafter, DBHA assessed a non-cumulative monthly fee of $7.59, or 1.5% per month for late payment of the common expenses. See Notice to PHH Mortgage [Doc. No. 139-3].

prohibition of 15 U.S.C. § 1692c(b) on third-party communications. And the third is that MEEB violated the prohibition against unfair practices contained in 15 U.S.C. § 1692f by attempting to collect 18% interest when they were not authorized to charge more than 6% under the Massachusetts usury statute, Mass. Gen. Laws ch. 107, § 3. MEEB argues that the claims must all be dismissed because MEEB is not a debt collector, as defined by the FDCPA, with regard to the alleged wrongful actions, and, alternatively, MEEB did not violate any provisions of the FDCPA.

  A. *Debt Collector*

In support of its argument that it is not a debt collector, MEEB relies on <u>Obduskey v. McCarthy & Holthus LLP</u>, 139 S. Ct. 1029 (2019), in which the Supreme Court held that entities engaged in no more than security-interest enforcement in nonjudicial foreclosure proceedings are largely exempt from the FDCPA.

The FDCPA covers the activities of "debt collectors" and broadly prohibits deceptive and abusive practices in connection with the collection of any debts. 15 U.S.C. §§ 1692d, 1692e, 1692f. The statute contains what the <u>Obduskey</u> Court labeled a "primary 'debt collector' definition," namely, "'any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" 139 S. Ct. at 1031, 1036 (quoting 15 U.S.C. § 1692a(6)). But the FDCPA also includes what the Court called a "limited-purpose definition," namely, that "[f]or the purpose of section 1692f(6) [the] term [debt collector] also includes any person . . . in any business the principal purpose of which is the enforcement of security interests.'" <u>Id.</u> at 1036 (quoting 15 U.S.C. § 1692a(6)). Section 1692f(6), in turn, lists as an unfair or unconscionable practice "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstance. The issue in

Obduskey concerned the interplay of these two definitions when the conduct at issue involved enforcement of a security interest in property.

Briefly, in Obduskey, the petitioner purchased a home with a bank loan secured by the property. Obduskey, 139 S. Ct. at 1034. Two years later, the petitioner defaulted, and five years after that, the bank hired a law firm to carry out a nonjudicial foreclosure. Id. at 1035. The law firm sent the petitioner a letter stating that it had been instructed to commence foreclosure against his property, and the petitioner alleged that she responded to the letter and asked for verification of the debt but did not receive a response. Id. After the law firm initiated a nonjudicial foreclosure action under state law, the petitioner filed suit against the law firm, asserting that it had engaged in debt-collection activity prohibited by the general FDCPA provisions by initiating the nonjudicial foreclosure before verifying of the debt. Id.

The Court held that entities who do no more than enforce security interests in nonjudicial foreclosure proceedings in accordance with state law are subject only to section 1692f(g) of the FDCPA and not to the general provisions of the FDCPA for three reasons. Id. at 1036. First, to conclude otherwise, the Court reasoned, would render the limited-purpose definition superfluous. Id. at 1036-37. Next, the Court speculated that Congress might have chosen to treat security interests differently from ordinary debt collection to avoid conflicts with state laws. Id. at 1037. This was buttressed by the fact that certain foreclosure-specific protections under state law, "designed to prevent sharp collection practices and to protect homeowners," are "in tension with" the FDCPA. Id. Finally, the Court cited to the legislative history of the FDCPA as evidence of a legislative compromise regarding coverage for entities involved in enforcing security interests. Id.

Based on these considerations, the Court concluded that the law firm was not a debt collector under the primary definition of the FDCPA where it was engaged in no more than enforcing security interests in nonjudicial foreclosure proceedings in a manner "required by state law." Id. at 1038-39. In reaching this conclusion, however, the Court left open the question of whether entities who enforce mortgages through judicial processes might remain subject to the general FDCPA provisions as debt collectors, noting that the availability of a deficiency judgment was a potentially relevant distinction. Id. at 1039 ("whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day"). MEEB argues that Obduskey's reasoning applies here.

To the extent that MEEB's challenged actions were taken only to enforce a lien, they fall within the limited-purpose definition such that MEEB may not be considered a debt collector under the FDCPA's primary definition for purposes of those actions as explained in Obduskey. First, where MEEB was seeking to comply with its obligations under Massachusetts law to perfect DBHA's lien priority, any other reading would frustrate the state law provisions. For example, the FDCPA prohibits debt collectors from communicating with third parties about the debt absent consent from the debtor. 15 U.S.C. § 1692c(b). But to enforce a statutory lien under Mass. Gen. Laws ch. 183A, § 6, Massachusetts law *requires* that a condominium association send notice to any first mortgagee when a unit owner's payment of common expenses has been delinquent for more than sixty days. Mass. Gen. Laws ch. 183A, § 6(c). If MEEB were considered a debt collector under the FDCPA's primary definition based on its pursuit of a judicial foreclosure on behalf of DBHA, it could not comply with Massachusetts law without violating the FDCPA.

Foreclosure, moreover, is a traditional area of state concern. See BFP v. Resolution Trust Corp., 511 U.S. 531, 544 (1994) (characterizing regulation of foreclosures as "an essential state interest"). And where Congress legislates "in a field which the States have traditionally occupied," federal courts "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Where this court finds no such purpose in the text or legislative history of the FDCPA, the court declines to construe the FDCPA in a manner that would create a sustained tension between the FDCPA and Massachusetts' statutory scheme for enforcing condominium liens.

In Obduskey, the Court noted that the availability of a deficiency judgment was a "potentially relevant distinction" in determining the applicability of the FDCPA. 139 S. Ct. at 1039. Under Mass. Gen. Laws ch. 183 § 6(b), a "unit owner shall be personally liable for all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the organization of unit owners and all costs of collection including attorneys' fees, costs, and charges." Mass. Gen. Laws ch. 183 § 6(b). The statute does give a condominium association the right to pursue a deficiency judgment. But to the extent that MEEB's actions here were directed only to enforcing its lien, that distinction would not matter.

In sum, where MEEB was seeking only to enforce a lien, it acted only as a limited-purpose debt collector for purposes of the FDCPA. However, to the extent MEEB took different actions, or sought to collect sums from the Brittons separate from the liens, this limited-purpose limitation would not apply.

B. *Alleged FDCPA Violations*

1. MEEB's Notice to the Brittons of Unposted Legal Fees

The Brittons first claim that MEEB's November 15, 2017 notice of delinquency addressed to them contained a false or misleading representation, in violation of 15 U.S.C. § 1692e, where it included $17,179.04 in "unposted legal fees" for July through November of 2017, prior to DBHA's obtaining a final judgment for that amount.

MEEB's November 15, 2017 notice to the Brittons states:

> This Notice is being provided to you in accordance with the Massachusetts Condominium Act on behalf of the Condominium in its efforts to enforce the lien on your unit. You should be aware that this law provides that the First Mortgage Holder, if any, be given notice of this lien, and that the Condominium may file a lawsuit to enforce its lien. While the lawsuit *will not seek personal liability against you*, the lawsuit will seek an order to foreclose the lien upon the Unit.

Notice to Brittons [Doc. No. 139-4]. Where MEEB was not pursuing any deficiency judgment against the Brittons in their personal capacities and the fees at issue were allegedly incurred during the six-month period prior to the notice, MEEB was acting as a limited-purpose debt collector seeking to perfect a lien, not as a debt collector under the primary definition. Accordingly, as to this action, MEEB is subject only to those restrictions contained in section 1692f(6) of the FDCPA. Obduskey, 139 S. Ct. at 1037-39. That section prohibits a "debt collector" from:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
> (A) there is no present right to possession of the property . . . ;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

Where this claim does not implicate these restrictions, summary judgment in MEEB's favor is warranted.

        2.        MEEB'S Notice to the First Mortgagee

The Brittons next assert that MEEB's November 15, 2017 notice of delinquency to the first mortgagee violated the prohibition of 15 U.S.C. § 1692c(b) on third-party communications. As discussed above, the Court in Obduskey did not suggest that the enforcement of a security interest grants an entity blanket immunity from the FDCPA. Id. at 1040. Rather, an entity is protected only to the extent that its conduct is limited to that *required* for the enforcement of the security interest; an entity that takes actions beyond those "antecedent steps" is subject to the full panoply of FDCPA prohibitions.

In this case, the notice of delinquency to the first mortgagee included a cover email explaining that MEEB was "starting the collections process over for the most recent months of July through November 2017." Notice to PHH Mortgage 1 [Doc. No. 139-3]. However, the communication also attached a ledger for June 30, 2012, to November 10, 2017. Based on this attachment, it is not clear whether MEEB was trying only to enforce the most recent six-month priority lien or whether it was attempting to collect an additional unpaid balance. And to the extent that MEEB took actions beyond those required under Massachusetts law to enforce the lien or sought to collect sums from earlier periods, the limited-purpose definition would not apply. The court accordingly denies summary judgment where MEEB has not demonstrated that the notice of delinquency to the first mortgagee is exempt from scrutiny under FDCPA.

        3.        MEEB's Attempt to Collect Unauthorized Interest

The Brittons' final claim is that MEEB violated the prohibition against unfair practices contained in 15 U.S.C. § 1692f by attempting to collect 18% interest when it was not authorized to charge more than 6% under the Massachusetts usury statute, Mass. Gen. Laws ch. 107, § 3. Here, again, the attachment of the June 30, 2012, to November 10, 2017 ledger to the notices of

delinquency sent to both the first mortgagee and the Brittons make it unclear what MEEB was trying to collect.

The ledger includes monthly late fees beginning in July 2012. See Notice to PHH Mortgage [Doc. No. 139-3]. From July 2012 through May 31, 2017, DBHA assessed a monthly, cumulative fee of 1.5% for late payment of the common expenses. Id. This amounted to late fees of 18% on an annual basis. Id. Beginning in June 2017, the late fees assessed became monthly, noncumulative fees of 1.5%. Id. Where the ledger includes a running balance from July 2012, the court cannot, on this record, conclude that MEEB was not attempting to collect a balance that included the 18% annual interest on the delinquent common expenses.

### IV. Conclusion

For the foregoing reasons, MEEB's Motion for Summary Judgment [Doc. No. 140] is GRANTED IN PART as to the Brittons' claim regarding unposted legal fees but DENIED IN PART as to the claims regarding MEEB's notice to the first mortgagee and its attempt to collect unauthorized interest.

IT IS SO ORDERED

June 27, 2022                                    /s/ Indira Talwani
                                                 United States District Judge